# EXHIBIT A

**Huntington**  Personal Loan Agreement - Fixed Rate

This is a loan directly from THE HUNTINGTON NATIONAL BANK to you. The terms "we", "us", and "our" mean that bank. The terms "you" or "your" mean each person who signs this agreement. This agreement states the terms of this simple interest rate loan from us. This loan is arranged by __KENNY ROSS FORD_____ (the "Dealer", which term includes any of Dealer's employees or agents). Please read this agreement carefully and if you agree to these terms, sign your name below. Each of you is responsible both individually and jointly under this agreement (known as "joint and several" responsibility).

**Federal disclosures:** The following disclosures are required to be given by federal law:

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 5.99 % | $ 16898.28 | $ 87600.36 | $ 104498.64 |

Your payment schedule will be (final payment amount is estimated):

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 1451.37 | Monthly beginning on 10/25/2019 |
| N/A | N/A | N/A |

**Security:** You are giving a security interest in a motor vehicle.
☐ You are also giving a security interest in the following personal property (list each item): ____N/A____

**Property Insurance:** You may obtain property insurance and vendor's single interest insurance from anyone you want that is acceptable to us.
**Filing fees: $** ____26.00____
**Late charge:** If a payment is more than 10 days late, you will be charged $35.00.
**Prepayment:** If you pay off early, you will not have to pay a penalty, and will not be entitled to a refund of any prepaid finance charge.
See the other parts of this agreement and any other contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment penalties, and security interests.

**Date of this loan**
The date of this loan is ____09/25/2019____.
**Principal amount of this loan**
The principal amount of this loan is $ ____87600.36____.
**Interest rate**
The interest rate applicable to this loan is __5.9900__% per year.
**Itemization of amount financed**
We and/or the Dealer may be retaining a portion of the charges from other products and services sold in connection with this loan. You authorize us to pay the proceeds of this loan in the following manner:
1. To Dealer on your behalf ............................. $ __87600.36__
   For your information, Dealer represents to you and to us that this amount covers the items in (a) through (i) below and is the sum of items (c) through (f). We do not warrant or guarantee Dealer's application of these amounts.
   (a) Cash price ............................................... $ __89574.36__
       (sum of items (i) through (iii) below)
       (i) Price of property/services purchased ......... $ __89159.36__
           (may include taxes, accessories and other items)
       (ii) Dealer documentation fee ....................... $ __144.00__
       (iii) License, title and registration fees ............. $ __271.00__
   (b) Less downpayment .................................... $ __2000.00__
       (sum of items (i) and (iv) below, but not less than zero)
       (i) Cash (including rebates) ....................... $ __2000.00__
       (ii) Trade-in allowance (gross) ...................... $ __N/A__
           Year _____ Make _____
           Model _____
       (iii) Amount owed on trade-in ........................ $ __N/A__
       (iv) Trade-in allowance (net) ....................... $ __N/A__
   (c) Unpaid balance of cash price ((a) minus (b)) ....... $ __87574.36__
   (d) Additional amount to pay off trade-in ............. $ __0.00__
   (e) Payoff of prior loan (if a refinance) ............. $ __0.00__
   (f) Lien filing fee ..................................... $ __26.00__
       (Same amount as in "Filing fees" from the federal disclosures above)
   (g) Credit insurance .................................... $ __N/A__
   (h) Extended service contract or warranty ............. $ __N/A__
   (i) __N/A_____ $ __N/A__
   (j) __N/A_____ $ __N/A__
   (k) __N/A_____ $ __N/A__
   (l) __N/A_____ $ __N/A__
2. To insurance co. for vendor's single interest insurance .... $ __N/A__
3. To us for _____ $ __N/A__
4. To us for _____ $ __N/A__
5. To us for loan fee ..................................... $ __N/A__
6. Less prepaid finance charge ............................ $ __N/A__
7. Amount financed (sum of 1, 2, 3, 4 and 5, minus 6) .... $ __87600.36__

**Your promise to pay**
By signing this agreement, you promise to pay us all of the following:
- The principal amount of this loan as provided in this agreement.
- Daily simple interest on the unpaid balances of the principal amount from time to time outstanding at the interest rate as provided in this agreement.
- Other charges due as provided in this agreement.

You must pay us at the address we tell you or at any of our banking offices. Interest begins to accrue on the date of this agreement. Daily simple interest means that interest is charged each day after applying any payments you have made.

**Credit insurance**
Credit life insurance and credit disability insurance are NOT REQUIRED to obtain this loan and will not be provided unless each of you to be insured qualifies and signs below, indicating your agreement to pay the additional cost for the type of coverage selected. Your choice whether or not to buy credit insurance has NO effect on our decision to make your loan, and we do NOT consider your insurance choice in any way when we make our loan decision. Any insurance benefit may not pay this loan in full.

If you want to buy credit insurance, you are buying it from or through the Dealer, and not from or through us. Any questions about this insurance must be directed to the Dealer, and not us. If you want to buy it, you must sign below on the line under the type of insurance elected. Two signatures for a type of insurance will indicate that joint coverage for both persons signing is elected. The policies or certificates issued by the insuring company will more fully describe the coverages, terms and conditions of the credit insurance.

**Credit life insurance:**     Term: __N/A__ months   Cost: $ _____N/A_____
(1) _____   (2) _____
        (Signature)                       (Signature)

**Credit disability insurance:** Term: __N/A__ months  Cost: $ _____N/A_____
(1) _____   (2) _____
        (Signature)                       (Signature)

**Optional Debt Protection Agreements**
Debt Protection Agreements are NOT REQUIRED to obtain this loan and will not be provided unless you sign below and agree to pay the cost for such product(s). GAP (Guaranteed Auto Protection) is a type of debt protection agreement. The Dealer will give you additional documents for any of these products that you purchase. We will credit your loan for the amount that your GAP protection indicates is waived or canceled when we receive payment for that amount from the Dealer or provider of the GAP protection.

You want to buy GAP at a cost of $ _____N/A_____
GAP Company Name: __N/A_____
(1) _____
                (Signature)
(2) _____
                (Signature)

**Collateral for this agreement**
As collateral for this loan, you give us a security interest in the following property and its accessions, and in any attachments existing as of the date of this loan or which you acquire within 10 days after that date:
YEAR __2019_____ MAKE __FORD_____
MODEL __F250_____ ODOMETER __22_____
VIN __1FT7W2BT0KEF28014_____
You represent that you will use the collateral primarily for ☒ consumer (personal, family or household use) ☐ business ☐ farming purposes. You agree to keep the collateral at:
__3160 LEECHBURG ROAD__              __PITTSBURGH__
   No. & Street                            City
__ALLEGHENY__              __PA__          __15239__
   County                    State           Zip

As additional collateral, you also give us a security interest in:
- Any other property described in the "Security" section of the federal disclosures, which you agree to keep at the location disclosed above, unless otherwise stated in this agreement.
- Any proceeds of the vehicle or other property described above and its accessions and attachments.
- Any proceeds of any service contracts, warranties, insurance, GAP coverage, debt cancellation coverage, debt suspension coverage or other products or services required or purchased in connection with this agreement, and any refunds of any charges or premiums for any such products or services.

We agree that any security interest which secures any other present or future loan from us does not secure this loan. Additional provisions about the collateral are found on Page 3 under "Additional Security Interest Provisions"

**Payment schedule**
You agree to pay this loan according to the payment schedule shown in the federal disclosures on Page 1. However, the final payment amount shown on Page 1 is only an estimate. On the final payment due date, you must pay us the outstanding balance of the principal amount and any accrued but unpaid interest and other charges. The payment schedule in the federal disclosures is based on the assumption that we receive each payment on its due date. If you pay late, incur other charges or if other amounts are added to your loan as permitted by this agreement (such as for taxes, insurance or other charges with respect to the collateral), the final payment amount could be significantly more than the estimate shown in the payment schedule above.

All payments are due on the same date of the month as the first payment, or on the last day of any month that does not have a corresponding date. You agree that we may apply all payments first to earned interest, and then to the principal amount and/or other charges and amounts owed as we determine. If we receive any payment after our cut-off time on a given day, that payment will be considered received on the following business day.

**Additional products and services**
Additional products and services (such as extended service protection, warranty, debt cancellation protection, debt suspension protection or other products and services offered by the Dealer) are not required to obtain this loan. If you want any of these products or services from the Dealer and want the cost to be included in the amount financed, the cost will be shown in the "Itemization of amount financed" section of this agreement. Refer to the policy, certificate, contract or other documentation provided by the Dealer or the company providing the product or service for more information about the product or service. Some or all of the cost for any additional products and services may be retained by the Dealer.

**Assignment of this agreement**
We have the right to assign this agreement without your consent or approval. Anyone to whom we assign this agreement has all of our rights, unless we retain some of those rights or rights are reassigned to us. If we assign this agreement, we may act as agent or other representative for the assignee of the loan. If we act as agent or other representative, you agree that we may exercise in our own name on behalf of the assignee any rights of the assignee with respect to the loan and the collateral to the extent of the authority granted to us as agent or other representative. You should continue to make all payments due under this agreement to us unless we notify you otherwise.

**Set-off**
We have the right of set-off. This means that we may apply any money in any deposit account with us on which your name appears as owner or co-owner to the payment of the amount you owe us which is due.

**Other terms**
If we finance or pay for any credit, property or other insurance, debt cancellation, debt suspension, service contract, warranty, GAP coverage, or other product or service, you agree that we may apply any refund of premiums or charges for such products or services in payment of the amount you owe us, even if none of your payments are past due. We, and/or Dealer, may receive some value from other products and services sold in connection with this loan.

You waive presentment of this agreement. You waive all relief from valuation and appraisement laws, to the extent not prohibited by applicable law.

We may delay enforcing any of our rights against any of you any number of times without losing any rights against you or others then or in the future. We may enforce this agreement against your estate. Except when otherwise required by applicable law, notice to you or any one of you will constitute notice to all of you. In addition to the rights we have under this agreement, we also have any other rights available to us at law or in equity.

**Governing law**
The interest rate, fees and charges, and other terms of this agreement are governed by federal law. However, to the extent federal law does not apply or refers to or incorporates state law, the law of the state of Ohio shall be applicable.

**Loan fee**
If a loan fee is charged for this loan, it is shown in the Itemization of Amount Financed on Page 1. The loan fee is a charge for making this loan and is a prepaid finance charge. If you prepay this loan in full or in part, you will not receive a refund of the loan fee.

**Late payment charge**
If we do not receive a payment within 10 days after it is due, you agree to pay a late charge of $35.00. For example, a payment due on the 1st of the month is subject to a late charge if we do not receive it by the 11th of the month.

**Deferral provision**
If you agree to a deferral of any payment(s) (including a pass-a-payment), we may, at our option, defer the payment(s) and charge you our deferral fee for each month your loan is deferred. We will continue to earn interest on the unpaid principal balance. Any such deferral will not result in an extension of the period of coverage for any credit insurance or additional products and services you have elected.

**Returned item charge**
If you pay us with a check, a money order, preauthorized charge, electronic payment or debit or other item, and it is returned to us unpaid after we try to collect it, you agree to pay us a returned item charge of $25.00.

**Early payment**
There is no prepayment charge if you pay off this loan in full or in part early. Partial prepayments will not affect your obligation to pay the regular monthly payment amount on the payment due dates following partial prepayment (as long as amounts are owed) unless we agree differently in writing.

**Default**
If you default, you agree that after giving you notice and right to cure required by applicable law (if any), we can require you to pay, and you agree to pay immediately, the full unpaid balance of the principal amount and any unpaid interest and other charges (this is our "acceleration" right), or we can require you to furnish more collateral. You default:
1. If you fail to pay any payment when due.
2. If you give false, incomplete, or misleading information on a credit application.
3. If any promises under this agreement, any security agreement, or any other agreement with us are broken.
4. If you or any guarantor or surety for this agreement die.
5. If you or any guarantor or surety for this agreement become subject to Title 11 of the United States Code (Bankruptcy Code).
6. If you or anyone you allow to drive or occupy the collateral is arrested for, charged with, or convicted of any violation (other than a minor traffic violation), misdemeanor, or felony involving the collateral in any manner.
7. If the collateral is stolen or damaged beyond repair, is abandoned or is subject to any levy, execution, seizure, or impoundment, or if you or anyone else other than us grants, places or files, or attempts to grant, place or file, any lien, encumbrance or security interest on the collateral or title to the collateral.
8. If anything happens to the collateral or anything else happens which we think endangers your ability to pay us.

**Default costs and expenses**
If you default, you will have to pay the following costs and expenses we incur, to the extent not prohibited by applicable law:
1. Our reasonable attorneys' fees if we hire an attorney who is not our employee.
2. Court costs.
3. Reasonable costs and expenses of taking possession, holding, preparing for sale, processing and selling the collateral.

You must pay these amounts to us when we ask you to. If you do not, we may add these costs to the unpaid balance of the principal amount, charge interest thereon at the rate or rates provided in this agreement, and increase either the number or the amount of the remaining payments.

## ADDITIONAL SECURITY INTEREST PROVISIONS

**Taking possession of the collateral**

If any promises under this agreement are broken, or if we exercise our acceleration right, then, without giving you any advance notice unless required by applicable law, we may take possession of the collateral. To take possession of the collateral, we may enter the premises where the collateral is stored and remove it. We will not breach the peace. Our retaking of the collateral does not release you from any obligation under this agreement. We may take any property in the collateral at the time of retaking and hold it for you as described under "Personal property in the collateral" below. This is in addition to any other rights we have. All of our rights are cumulative, may be exercised at the same time or at different times, and are not exclusive. If we ask, you agree to deliver the collateral to us at any reasonable time and place we choose.

If we take possession of the collateral, we may give you a right to redeem the collateral. However, we will give you any right of redemption and any notice that applicable law requires. If you have the right or we allow you to redeem the collateral, you must pay us the costs of taking possession of the collateral and other costs we require, to the extent not prohibited by applicable law. Any such amounts that you do not pay, we may add to the unpaid balance of the principal amount, charge interest thereon at the rate or rates provided in this agreement, and increase either the number or the amount of the remaining payments. If you do not redeem the collateral, we may sell it. We will give you notice of any public sale, or if permitted by applicable law the date after which we may hold a private sale. You agree that we do not have to send any notice of sale more than 10 days in advance unless required by applicable law.

After selling the collateral, we will apply the sale proceeds (i) to the reasonable cost of taking possession, holding, preparing for sale, processing and selling the collateral, and to any other amounts required by applicable law, (ii) to reasonable attorneys' fees and costs, where not prohibited by applicable law, and (iii) then to the other amounts due under this agreement. If the sale proceeds are not enough to pay these costs and all other amounts owed under this agreement, you will be liable for the difference, to the extent not prohibited by applicable law. If there is a surplus, we will pay the amount of the surplus to the person(s) we determine are entitled to it, subject to any right of set-off we may have.

**Personal property in the collateral**

You agree that we will not be responsible at any time for any personal property you keep or carry in the collateral. This is so during the agreement term and after return or retaking of the collateral. After return or retaking of the collateral, we or our representative will hold any such property found in the collateral for a period of 10 days, or such longer time as required by applicable law. Unless required by applicable law, we will not notify you that such property has been found in the collateral. If you do not pick up the property within that 10-day period, we have the right to dispose of it in any manner that we determine.

**Use of the collateral**

While any part of this loan is unpaid, you promise:
1. To use the collateral carefully, keep it in good condition, and obtain our written consent before making any major alterations.
2. To tell us in writing before changing the address of your residence or the address where the collateral is kept.
3. Not to use the collateral for any unlawful purpose.
4. That you own the collateral and will not sell, transfer, grant a license in, lease or dispose of all or part of the collateral, or allow any lien, encumbrance or security interest other than ours to be granted, placed or filed on the collateral or title to the collateral.
5. To pay all taxes and other fees and assessments due on the collateral.
6. Not to remove the collateral from the continental United States.
7. If the collateral is a motor vehicle or other titled property, (i) to keep the vehicle or other property titled (with our lien noted), registered and licensed in the state where the vehicle or other property is kept, (ii) to sign and return to us any documents required at any time in connection with title, registration or licensing of the vehicle or other property, (iii) to pay any fees required at any time by government agencies in connection with title, registration or licensing of the vehicle or other property, (iv) to pay our service fee each time the vehicle is retitled, and (v) to assist us as we may require in connection with title, registration or licensing of the vehicle or other property.

If any taxes or other fees or charges with respect to the collateral are not paid, we may (if we choose) do so ourselves. If we do, you must reimburse us when we ask you to. If you do not reimburse us, we may add the cost to the unpaid balance of the principal amount, charge interest thereon at the rate or rates provided in this agreement, and increase either the number or amount of the remaining payments.

**Notice of security interest**

You authorize us to file a financing statement in order to protect our security interest in the collateral. You agree to sign the financing statement, if requested. If the collateral is in the possession of a third party, you agree to assist us in notifying the third party that it is holding the collateral for our benefit.

**Return or release of title**

To the extent not otherwise prohibited by applicable law, if we hold or otherwise control title or other evidence of ownership of the collateral in connection with our security interest, we may return or release control of such title or other evidence of ownership to the person or persons we determine are entitled to it.

**Property and vendor's single interest insurance**

(a) Until all amounts owed on this loan are paid in full, you must protect our interest in the collateral by keeping the collateral insured against collision, fire, theft, or other physical damage. The amount of coverage must be enough to pay the entire unpaid balance of the principal amount and any unpaid interest and other charges, but not more than the value of the collateral. You may provide such insurance through a policy or policies that you own or control, or through a new policy that you obtain. You must provide us with evidence of such insurance by mailing it to us at the following address: Huntington Insurance Services, P.O. Box 3310, Carmel, IN 46082. Such insurance must name us as loss payee and must pay us as our interests may appear.

(b) If you fail to give us evidence satisfactory to us that you have in force the insurance described in paragraph (a) as required, you authorize us in our sole discretion to buy insurance on the collateral, after giving you any notice required by applicable law. You authorize us, and any insurance company or insurance agent we use, to obtain any consumer reports from consumer reporting agencies that we or our insurance company or agent deem necessary or appropriate in connection with the placement of such insurance. The insurance we buy will cover some or all of the risks that you are required to insure against pursuant to paragraph (a), but we may elect to cover only our insurable interest as secured party in the collateral. We will provide you with a copy of a policy or certificate for such insurance. Such insurance we buy will not give you any liability insurance coverage, will not meet the requirements of a state's financial responsibility law, and may not separately insure your interest in the collateral.

(c) You must reimburse us on demand for the cost of any insurance we purchase as described in paragraph (b). Such insurance may cost more than insurance you can buy on your own. By signing this agreement you agree that if you do not reimburse us for the cost of such insurance on demand, we may add the cost of such insurance to the unpaid principal amount of this loan and charge interest on it at the rate or rates provided in this agreement. You further agree that we may also revise the payment schedule of this loan to increase either the number or amount of the remaining payments or increase the amount of the final payment. We or an affiliate of ours may receive compensation for placing this insurance, which may be included in the cost of coverage charged to you. We will not require you to reimburse us for such insurance under this paragraph (c) if you have paid for vendor's single interest insurance as provided under paragraph (e) below.

(d) We will cancel the insurance we bought pursuant to paragraph (b) and give you a refund or credit of unearned charges if you give us evidence satisfactory to us that you have in force the insurance described in paragraph (a) or if you have paid off the loan.

(e) We may require you to pay for vendor's single interest insurance at the time this loan is made. This is in addition to your own insurance on the collateral required by paragraph (a). If we do so, the cost for the full term of this loan is shown in the "Itemization of amount financed" section on Page 1 of this agreement. This vendor's single interest insurance will only cover our insurable interest as secured party in the collateral, and will only provide coverage if we recover the collateral after your default.

(f) You may obtain the insurance required by paragraph (a) and/or vendor's single interest insurance referred to in paragraph (e) from any insurance company you choose that is eligible to do business in your state and that is financially acceptable to us. Such insurance may be available through an affiliate of ours, but you are not required to use an affiliate. We or an affiliate of ours may earn some value or benefit in connection with insurance obtained from or through us or our affiliate.

**Communications to You Including to Cell Phones:** In order for us to service your Account or to collect any amounts you owe, you agree and consent that we or a third party acting on our behalf may from time to time:
- Make telephone calls and/or send text messages to you at any telephone number(s) you give to us or that we otherwise have for you or your Account, including wireless (cell phone) telephone numbers that could result in charges to you.
- Use any technology available at the time to make telephone calls and/or send text messages to you, including but not limited to the use of prerecorded/artificial voice messages and/or an automatic telephone dialing system.
- Send e-mails or any other available form of electronic communication to you at any e-mail or other electronic address you give to us or that we otherwise have for you or your Account.
- Monitor and record any telephone call or other communication between you and us.

## ARBITRATION PROVISION

This Arbitration Provision describes when a Claim (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. It can be a quicker and simpler way to resolve disputes. As solely used in the Arbitration Provision, the terms "we," "us" and "our" mean The Huntington National Bank, its parent companies, wholly or majority-owned subsidiaries, affiliates, successors, assigns and any of their employees, officers and directors. These terms for purposes of this Arbitration Provision also mean any third party providing any goods or services in connection with the origination, servicing and collection of the loan if such third party is named as a party by you in any lawsuit between you and us.

**(a) Your Right to Reject:** If you don't want this Arbitration Provision to apply, you may reject it by mailing us a written rejection notice which contains all of the following:
- The date and amount of this loan.
- The names, addresses and phone numbers of each of the borrowers for this loan.
- A statement that all of the borrowers reject the Arbitration Provision in this loan.

The rejection notice must be sent to The Huntington National Bank, P.O. Box 340978, Columbus, Ohio 43234-0978. A rejection notice is only effective if it is signed by all borrowers and cosigners and if we receive it within 30 days after the date of this loan. If you reject this Arbitration Provision, that will not affect any other provision of this agreement or the status of your loan. If you don't reject this Arbitration Provision, it will be effective as of the date of this loan.

**(b) What Claims Are Covered:** "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to this loan, the collateral for this loan, or to any purchase you are financing with this loan. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). Subject to paragraph (f) below, it also includes disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or the agreement. However, "Claim" does not include (i) any self-help remedy, such as repossession of the collateral or the right of set-off, or (ii) any individual action in court by one party that is limited to preventing the other party from using a self-help remedy and that does not involve a request for damages or monetary relief of any kind. Moreover, we will not choose to arbitrate an individual Claim that you bring against us in small claims court or your state's equivalent court, if any. But if that Claim is transferred, removed or appealed to a different court, we then have the right to choose arbitration.

**(c) How Arbitration Is Started:** Either you or we may require any Claim to be arbitrated. Arbitration is started by giving written notice to the other party of the intent to start or to compel arbitration. This notice may be given before or after a lawsuit has been started over the Claim or with respect to other Claims brought later in the lawsuit. If you start the arbitration, you must notify us at the following address: The Huntington National Bank, Indirect Auto Arbitration, Attention: Auto Finance Operations, P.O Box 340978, Columbus, Ohio 43234-0978. If we start the arbitration, we will notify you in writing at your last known address we have on file. Arbitration of a Claim must comply with this Arbitration Provision and, to the extent not inconsistent or in conflict with this Arbitration Provision, the applicable rules of the arbitration Administrator.

**(d) Choosing the Administrator:** The party requiring arbitration must choose one of the following arbitration organizations as the Administrator: American Arbitration Association (www.adr.org) or JAMS (www.jamsadr.com). In all cases, the arbitrator(s) must be a lawyer with more than 10 years of experience. However, no arbitration may be administered by an arbitration organization that will not follow, or has any policies or procedures materially inconsistent with, the terms of this Arbitration Provision. If for any reason the chosen arbitration organization is unable or unwilling or ceases to serve as the Administrator, or does not qualify or ceases to qualify as an Administrator under the terms of this Arbitration Provision, the party requiring arbitration will have 20 days to choose a different Administrator consistent with the requirements of this Arbitration Provision from among the above-named arbitration organizations. If none of the above-named organizations qualifies to be an Administrator under the terms of this Arbitration Provision, the parties shall, within 20 days after learning of such disqualification, agree on another arbitration organization that does qualify under the terms of this Arbitration Provision. In the absence of such agreement, either party may apply to a court of competent jurisdiction for the court to appoint an Administrator that does qualify under the terms of this Arbitration Provision.

**(e) Court and Jury Trials Prohibited and Other Limitations on Legal Rights:** If arbitration is chosen with respect to a Claim, all of the following apply:
- There will be no right to try that Claim in court.
- There will be no jury trial on that Claim.
- There will be no discovery, except as allowed by the arbitration rules of the Administrator or this Arbitration Provision.
- We and you are prohibited from participating in a class action or class-wide arbitration with respect to that Claim (the "Class Action Waiver"). This means that neither we nor you can be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to that Claim. This also means that the arbitrator has no power or authority to conduct any class-wide arbitration.
- Claims brought by or against one borrower (or co-borrower) may not be joined or consolidated in the arbitration with Claims brought by or against any other borrower who obtained a different loan.
- Except as allowed by this Arbitration Provision and the Federal Arbitration Act, the arbitrator's decision will be final and binding.
- Other rights that you or we would have in court may also not be available in arbitration.

**(f) Effect of Class Action Waiver:** Regardless of anything else in this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator or by any policies or procedures of the Administrator. If the Class Action Waiver is invalidated or not enforced, then this entire Arbitration Provision (except for this sentence) shall be null and void--the Class Action Waiver is not severable from this Arbitration Provision. Nothing in this paragraph (f) shall affect the right of any party to appeal any invalidation or nonenforcement of the Class Action Waiver.

**(g) Location of Arbitration:** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**(h) Cost of Arbitration:** Each administrator charges fees to administer arbitration proceeding. This may include fees not charged by a court. When you choose an administrator, you should carefully review the fees charged by the administrator. If you or we start arbitration of a Claim, we will pay or reimburse you for up to $1,000 in fees that would otherwise be charged to you by the administrator. However, you may tell us in writing that you can't afford to pay the fees charged by the administrator or that you believe those fees are too high. If you do so, we will pay or reimburse you for up to all of the fees that would otherwise be charged to you by the administrator if your request is reasonable and in good faith. We will always pay the fees if applicable law requires us to. We will not ask you to pay or reimburse us for any fees we pay the administrator. Notwithstanding any provision in this loan agreement or any other applicable agreement or any right we may have under applicable law (i) we will pay your reasonable attorneys', experts' and witnesses' fees with respect to any Claim in the arbitration on which you prevail, whether you or we start the arbitration, or as required by applicable law, but otherwise those fees will be your obligation, and (ii) we will not ask you to pay or reimburse us for any of our attorneys', experts' and witnesses' fees in connection with the arbitration, regardless of which party prevails in the arbitration.

**(i) Governing Law:** This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. §§1 et seq. and not by any state arbitration law. The arbitrator must apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and claims of privilege recognized at law. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court. At the timely request of either party, the arbitrator must provide a brief written explanation of the basis for the award.

**(j) Right to Discovery:** In addition to the parties' rights to obtain discovery pursuant to the arbitration rules of the Administrator, either party may submit a written request to the arbitrator to expand the scope of discovery normally allowable under the arbitration rules of the Administrator. The Arbitrator shall have discretion to grant or deny that request.

**(k) Arbitration Result and Right of Appeal:** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. However, if the amount of the Claim exceeds $100,000, any party can appeal the award to a three-arbitrator panel administered by the Administrator which shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Provision to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**(l) Rules of Interpretation:** This Arbitration Provision shall survive the repayment of all amounts borrowed from us, any legal proceeding, or any use of a self-help remedy by us to collect a debt owed by you to us, and any bankruptcy by you, to the extent consistent with applicable bankruptcy law. Subject to paragraph (f) with respect to non-severability of the Class Action Waiver, if any portion of this Arbitration Provision is deemed invalid or unenforceable, (i) it shall not invalidate the agreement and (ii) it shall not invalidate the remaining portions of this Arbitration Provision provided that such remaining portions are not then materially inconsistent with the terms of this Arbitration Provision prior to such determination of invalidity or unenforceability. In the event of a conflict or inconsistency between this Arbitration Provision, on the one hand, and the applicable arbitration rules or the other provisions of this agreement, on the other hand, this Arbitration Provision shall govern. This Arbitration Provision supercedes any other arbitration provision or requirement that may otherwise be applicable, including one contained in an agreement with the Dealer.

| NOTICE |
|---|
| ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. |
| You agree that this notice applies only if the consumer purpose block under "Collateral for this agreement" is checked and only if you use the proceeds of this loan to purchase the collateral described under "Collateral for this agreement". |

| Signature to Grant Security Interest Only |
|---|
| The person signing in this box is NOT responsible to repay this loan. This person is an owner of the collateral and is signing solely to give a security interest in the collateral. This person is subject to all of the provisions of this agreement except the obligation to pay (other than from the proceeds of collateral) principal, interest or other charges due. |
| Signature: _____ N/A _____ |
| Typed Name of Signer:    N/A |

| NOTICE TO COSIGNER |
|---|
| You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. |
| You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. |
| The bank can collect this debt from you without first trying to collect from the borrower. The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record. |
| This notice is not the contract that makes you liable for the debt. |

| NOTICE ABOUT THIS LOAN |
|---|
| This loan is a direct loan from us (the bank) to you. For your convenience, we have asked Dealer to complete and obtain your signature on this agreement. No employee or representative of Dealer is authorized to (i) agree to any terms that are inconsistent with the terms of this loan, (ii) enter into any side agreement that affects this loan, or (iii) alter or change any of the preprinted provisions of this agreement. No oral promises or agreements between you and Dealer about this loan are enforceable. |
| We may use part of the interest rate you pay to compensate Dealer for arranging this loan. As a result, your interest rate in excess of the minimum we require may be negotiated with Dealer, but is firm once you sign this agreement. |

| NOTICE OF ARBITRATION PROVISION |
|---|
| THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION ON PAGE 4. BEFORE SIGNING THIS AGREEMENT, YOU SHOULD READ THE ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THE ARBITRATION PROVISION IN THE MANNER ALLOWED, IT MAY HAVE A SUBSTANTIAL IMPACT ON THE WAY IN WHICH YOU OR WE RESOLVE ANY CLAIM THAT WE HAVE AGAINST EACH OTHER OR CERTAIN OTHER THIRD PARTIES. |

All of the provisions on all pages of this document are part of this agreement.

**Acknowledgment:** Each person or entity signing below is responsible for paying this loan in full. You acknowledge that you have read this entire agreement (including the Arbitration Provision on Page 4) and agree to be bound by its terms. You also acknowledge that Dealer has given you a copy of our Customer Information Privacy Notice.

| Individual Borrower Signature(s) | Corporation or Other Business Entity Signature |
|---|---|
| Signature: _____ N/A _____ <br> Typed Name: <br> Signature: _[signed]_ <br> Typed Name: | Typed Name of Company: maintenance <br> PITTSBURGH PROPERTY MAINTANCE LLC <br> Signature: _[signed]_ President GF <br> Typed Name of Signer: **GABRIEL SALVATOR FONTANA** <br> Title of Signer: |