IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: <br> GABRIEL S. FONTANA, <br> CHAPTER 11 <br> Debtor, <br><br> JTS CAPITAL 3, LLC, <br> Plaintiff, <br><br> vs. <br><br> PITTSBURGH DEVELOPMENT GROUP, LLC, <br> Defendant. | : CHAPTER 11 <br> : <br> : Bankruptcy No. 22-22293-CMB <br> : <br> : Adversary No. 23-02010-CMB <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## JOINT STATUS REPORT BY PITTSBURGH DEVELOPMENT GROUP LLC AND NLI INVESTORS, AS SUCCESSOR IN INTEREST TO JTS CAPITAL 3, LLC

Michael M. Monsour, Esquire, counsel for National Loan Investors, LP, ("NLI") successor to JTS Capital 3 LLC, along with Jonathan McCloskey, Esquire, counsel for Pittsburgh Development Group, LLC ("PDG"), have conferred as directed by this Court in the above-captioned action (See Doc 84). After conferring, undersigned counsel submits the following joint status report:

1. On October 1, 2024, this Court entered an Order in which it directed that counsel confer and provide a status report on or before October 10, 2024.

2. After extensive negotiations between the parties, on September 24, 2024, NLI, PDG and Daniel Asti entered into a Settlement Agreement (the "Agreement") for the final resolution of this case. (A copy of the executed Agreement is appended hereto and marked as Exhibit "A")

3. The key terms of the Agreement involve the immediate listing and sale of the real property located at 3160 Leechburg Rd., Pittsburgh, PA 15239 (the "Property"). The parties agreed to a 70%-30% split of the Net Sales Proceeds of the Property between NLI and Daniel Asti – but with NLI receiving a minimum amount of $30,000 from any sale of the Property (see para. 4 of the Agreement). If the Property cannot be sold after 12 months of the initial listing date, then it would be sold at auction. The Agreement contains a mutual release of all claims by and between NLI, Asti, and PDG. (see para. 7)

4. NLI agrees to waive its objection to the discharge of the indebtedness of Fontana in the pending Bankruptcy proceedings; and in exchange for that, Mr. Fontana waives any past, current or future claims that he has or may have in the Net Sale Proceeds from the Property and also releases NLI, Asti, and PDG from any claims arising out of this Litigation or this Agreement. (see para. 8)

5. Gabriel Fontana testified in his prior deposition in this case that Daniel Asti paid the monies to purchase the Property; Mr. Fontana further admitted that when he took out the $240k subject FNB loan in 2017, those loan proceeds were applied to pay off debt from Three Rivers Dismantlement LLC's line of credit – a business that Mr. Fontana solely owns.

6. The Agreement does not require Mr. Fontana to pay back the loan proceeds which PDG avers was stolen via the 2017 FNB loan and subsequent default.

7. The Agreement does not require Mr. Fontana to pay Asti, PDG or NLI any cash consideration.

8. On September 24, 2024, NLI's counsel send a copy of the executed Settlement Agreement to attorney Don Calaiaro, counsel to Gabriel Fontana, for his review. (copies of this entire email thread between counsel are appended hereto as Exhibit "A")

9. On October 1, 2024, this Court requested that the parties provide a status report on or before October 10, 2024.

10. Attorney Don Calaiaro provided no response at all to the Agreement until October 7, 2024 when he replied and stated "please send it again. I cant [sic] find it in my emails. Thanks."

11. Attorney Calaiaro requested via email that Daniel Asti and PDG release Mr. Fontana form any claims.

12. The next day, on October 8, 2024, Attorney McCloskey replied on behalf of Asti and PDG and agreed to release Mr. Fontana from all claims as part of the Agreement. Attorney McCloskey reminded Don Calaiaro of the court's October 10, 2024 status report deadline and requested that Mr. Calaiaro draft redlines consistent with his requests for a mutual release.

13. Attorney Calaiaro replied that day that he will "work on that." One week has elapsed and Attorney Calaiaro has not done what he said he was going to do. Attorney Calaiaro has never drafted any redlines consistent with the proposals he was asking for in his emails.

14. After Asti and PDG's counsel agreed to the release requested by Attorney Calaiaro, he provided a new demand. This time, Attorney Calaiaro stated that he wants

90 days for Mr. Fontana to remove any personal property in the Leechburg Road Property.

15. PDG and Asti agreed to provide a reasonable amount of time (2 weeks) for Fontana to hire a moving company or enter the Property and remove his desired possessions. Attorney McCloskey asked Attorney Calaiaro to investigate whether Mr. Fontana intends to hire a moving company so that we can evaluate how much time he needs to remove personal possessions.

16. Attorney Calaiaro responded to attorney McCloskey on October 8th at 2:29pm by simply stating, "no thanks."

17. Counsel to Asti, PDG and NLI have worked hard to hash out and agree to reasonable settlement terms. They have accommodated Don Calaiaro's substantive request that the releases between Asti, PDG and Fontana be mutual.

18. Don Calaiaro flagrantly disregarded the spirit and substance of this Court's status report Order by being non-responsive to emails and promising to draft redlines but never following through.

19. Calaiaro received the signed Settlement Agreement from PDG, NLI and Asti on September 24, 2024 and sat on his hands and did nothing for two weeks despite knowing that a status conference report was due on October 10th.

20. Mr. Calaiaro received Attorney McCloskey's concession regarding the mutual release on October 8, 2024 but then created new unreasonable demands of a 90 day time period to remove possessions. He openly refuses to investigate why he needs

90 days – including whether his client is hiring a moving company or using family/friends help to complete this work.

21. Mr. Calaiaro refuses to communicate with Attorneys McCloskey and Monsour from October 8, 2024 through October 14, 2024 on this moving issue – which is not a material term to the Settlement Agreement.

22. Mr. Calaiaro's non-responsiveness to emails and insistence in raising trivial non-material issues (and then being non-responsive after that) is obstructing the final resolution of this case.

23. NLI, Asti and PDG request that Don Calaiaro provide a written detailed report to this Court within 10 days providing Mr. Fontana's plan including the timeline, hired help and monies he will spend on removing his personal items from the Property.

24. Further, in the alternative, NLI, Asti, and PDG request that the Settlement Agreement be enforced and the non-material issue of the move out of possessions be coordinated separately by the parties in good faith.

**STIPULATED AND AGREED TO BY:**

**KOZLOFF STOUDT**

By: /s/ *Michael M. Monsour*
    Michael M. Monsour, Esquire
    2640 Westview Drive
    Wyomissing, PA 19610
    610-670-2552
    mmonsour@kozloffstoudt.com
    *Attorneys for National Loan Investors, L.P., assignee of JTS Capital 3 LLC*

/s/ *Jonathan R. McCloskey*
Jonathan McCloskey, Esquire
Meyer Darragh Buckler Bebenek & Eck, PLLC
600 Grant St., Suite 4850, Pittsburgh, PA 15219
jmccloskey@mdbbe.com
Attorneys for PDG. LLC

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered into as of <u>September 20</u>, 2024 ("Effective Date") by and between Pittsburgh Development Group, LLC ("PDG") and Daniel Asti ("Asti") and Gabriel Fontana and National Loan Investors, LP ("NLI"). PDG, Asti, and NLI may be referred to individually as "Party" and collectively as the "Parties."

### RECITALS

**WHEREAS**, a dispute has arisen between PDG and NLI regarding a mortgage dated June 23, 2017 and recorded in the Recorder of Deeds Office at July 3, 2017 at Mortgage Book 48087, Page 95 (the "Mortgage") held by NLI on PDG's real estate located at 3160 Leechburg Rd., Pittsburgh, PA 15239 (the "Property"); and

**WHEREAS**, the dispute is currently the subject of litigation in the United States District Court for the Western District of Pennsylvania Bankruptcy Court Adversary Case No. 23-02010-CMB and Bankruptcy No. 22-22293-CMB (together, the "Litigation"); and

**WHEREAS**, the Parties desire to avoid further expense, inconvenience and the distraction of litigation, and put to rest further controversy, to compromise their potential claims and differences, and to effect the general and mutual release of certain claims which have been or may have been asserted by or against each of them in this or any other action (subject to the reservation of rights to enforce this Release hereinafter provided), upon the terms and conditions set forth hereunder;

**NOW, THEREFORE**, based upon the above recitals, which are expressly incorporated in this Release, and in consideration of the mutual terms, conditions and covenants set forth herein, for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound, the Parties agree as follows:

1. <u>Listing and Sale of the Property</u>. Asti shall cause PDG to list the Property for sale. Asti shall have sole and absolute discretion in listing the Property for sale, including the selection of a realtor and the terms of any listing agreement. If after twelve (12) months from the initial listing date there is no completed sale, no pending contract for sale and purchase of the Property, or there is no bona fide offer to purchase the Property, then the Property shall be sold at auction and Asti shall have sole discretion in selecting the auctioneer. The Realtor and the auctioneer shall be instructed to provide information directly to NLI regarding the marketing and sale of the Property upon NLI's reasonable request, but NLI shall not have any authority to control or direct the conduct of the Realtor or auctioneer in marketing the Property for sale, or in consummating any sale of the Property. The auction reserve price for the Property shall be set at a bid amount meeting or exceeding eighty-seven thousand five hundred dollars ($87,500.00). The Parties to this Agreement may not bid on the Property at auction. The Parties to this Agreement may not bid on the Property at auction, but if the Property remains unsold after auction, then PDG and/or Asti may pay to NLI the minimum payment owed under section 4 below and NLI shall accept the same in full satisfaction of the Mortgage.

{P1938279.1}



2. PDG and/or Asti will provide NLI with a copy of the settlement sheet for the sale of the Property within a commercially reasonable period of time not to be less than five (5) days in advance of the sale of the Property.

3. PDG and/or Asti will use commercially reasonable due diligence in marketing and selling the Property, will pay any delinquent taxes, will maintain hazard insurance on the Property, and will list NLI as the "first mortgagee" on the hazard insurance policy. Any payment to NLI under such policy shall not exceed the amount NLI would receive under this Agreement in an arms-length sale of the Property at fair market value.

4. Sale Proceeds. Asti shall receive 70% of the Net Sale Proceeds from any sale of the Property and NLI shall receive 30% of the Net Sale Proceeds from the same. "Net Sale Proceeds" means the proceeds remaining from the sale of the Property after deducting customary costs of sale, including but not limited to realtor commissions, real estate transfer tax, and closing expenses. NLI shall, however, receive a minimum of $30,000.00 from any sale of the Property regardless of the amount of the Net Sale Proceeds. NLI will release the lien of the mortgage upon receipt of the Net Sale Proceeds or the minimum payment, as applicable.

5. Time Benchmarks
Asti and/or PDG shall pay NLI the greater of either (a) pro-rated Net Sale Proceeds or (b) $30,000.00 Fourteen (14) Months after the date of execution of this Agreement or at the time of any closing on the sale of the Property, whichever date occurs first, unless NLI agrees to extend said deadline.

6. Dismissal of Litigation. In consideration of the mutual promises, covenants, and consideration under this Agreement, PDG, Asti, and NLI shall waive and forego all claims asserted or which could **have been asserted in the Litigation and shall cooperate in obtaining a mutual dismissal of the Litigation with prejudice as to one another.**

7. General Mutual Release of All Claims between NLI and PDG/Asti. NLI and PDG/Asti, each on its own behalf and on behalf of its representatives, agents, successors, predecessors and assigns, forever releases and discharges the other, and each and all of NLI's, Asti's, and PDG's respective representatives, agents, successors, predecessors and assigns from any and all past, present and future claims, counterclaims, demands, rights or causes of action arising out of or related to the Litigation; provided, however, that nothing herein shall release either Party from its obligations under this Agreement, or impair the assertion and enforcement of its rights under and in accordance with this Agreement.

8. Release of Claims related to Mr. Fontana. Mr. Fontana waives any past, current or future claims that he has or may have in the Net Sale Proceeds from the Property pursuant to this Agreement. Further, Mr. Fontana waives and forever releases and discharges all other Parties to this Agreement from any and all past, present and future claims, counterclaims, demands, rights or causes of action arising out of or relating to the Litigation and this Agreement. In return, NLI waives its objection to the discharge of the indebtedness of Fontana in the pending Bankruptcy proceeding(s). This Agreement shall not preclude any Party hereto from the enforcement of said Party's rights under and in accordance with this Agreement.

9. NLI will maintain its lien position as a mortgagee with regard to the Property until payment is made pursuant to this Agreement.

10. <u>Integration and Amendment</u>. The Parties expressly agree and hereby acknowledge that this Agreement constitutes the sole, complete, and entire agreement of the Parties concerning the subject matter hereof. No statements, promises or representations have been made by either of the Parties, or are relied upon, and no consideration has been or is offered, promised, expected or held out, other than as stated in this Agreement. Neither Party is relying on any representations other than those contained within this Agreement. No conditions precedent to the effectiveness of this Agreement exists, except as expressly set forth herein.

11. <u>No Admission of Liability</u>. This Agreement represents a compromise of disputed claims and does not constitute an admission of liability or fault by any Party regarding any fact, claim, allegation, issue of law or violation of law; nor will compliance with this Agreement constitute or be deemed an admission by any Party of any fact, claim, allegation, issue of law or violation of law. This Agreement may not be used as evidence of any wrongdoing, misconduct or liability by either of the Parties or anyone else. Neither the fact of execution nor any of the terms of this Agreement shall be admissible in any pending or future proceeding involving the Parties, or either of them, except in a proceeding among the Parties to enforce the terms of this Agreement.

12. <u>Modification</u>. This Agreement shall not be altered, modified or changed in any manner, nor shall any of the conditions herein be waived, except by a writing duly executed by all Parties hereto, or their authorized representatives.

13. <u>Applicable Law</u>. This Agreement shall be governed, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania and any proceeding relating to this Agreement shall be brought in the courts of Allegheny County, Pennsylvania.

14. <u>Costs and Attorneys' Fees</u>. Each Party shall be solely responsible for paying its own attorneys' fees and costs.

15. <u>Counterparts</u>. This Release may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same Release.

16. <u>Legally Binding</u>. The Parties intend that this Agreement will be legally binding upon, enforceable by and against, and shall inure to the benefit of each of them and their respective predecessors, successors, assigns, executors, administrators, heirs, and estates.

17. The liability of Asti and PDG to NLI for any obligation(s) under this Agreement shall be joint and several.

**IN WITNESS WHEREOF** the undersigned, having due authority and intending to be legally bound hereby, have caused this Agreement to be executed as of the day and year first written above.

By: _____
**National Loan Investors, LP**
**Authorized Representative:** _____
Title: _____
Date: _____

By: _____
**Pittsburgh Development Group LLC**
**Authorized Representative:** Daniel Asti
Title: <u>Member</u>
Date: _____

By:    Gabriel Fontana

By: _____
Date: _____

Daniel Asti
By: _____
Date: _____

# HUMAN SERVICES ADMINISTRATION ORGANIZATION

101 BELLEVUE ROAD, SUITE 001

PITTSBURGH, PA 15229

PHONE: (412) 301-8232     FAX: (412) 301-8239

October 25, 2023

Re: Sarah Georgiev
Fd# 22-1317

To: The Honorable Judge Hugh McGough

     Sarah Georgiev was assessed by IMPACT court assessor Barbara Hill on July 19, 2023, using the ASAM (American society of addiction medicine). The results of the evaluation are based on the information provided by the client and any data available at the time of the assessment. Based on the information collected, Sarah does not meet the criteria for drug and alcohol or mental health treatment. I am aware of the pending DUI charges against Ms. Georgiev, I would follow the recommendations if any from the criminal division.

Sarah has complied with all random drug and alcohol screening, results have been negative. Her last random screening was October 20, 2023. This file is closed.

If you have any additional questions, please contact me at 412-350-7068 or Barbara.Hill@alleghenycounty.us

Thank you,

Barbara Hill, MA CAAP
IMPACT court assessor

# HUMAN SERVICES
# ADMINISTRATION ORGANIZATION

101 BELLEVUE ROAD, SUITE 001

PITTSBURGH, PA 15229

PHONE: (412) 301-8232    FAX: (412) 301-8239

October 25, 2023

Re: Sarah Georgiev
Fd# 22-1317

To: The Honorable Judge Hugh McGough

Sarah Georgiev was assessed by IMPACT court assessor Barbara Hill on July 19, 2023, using the ASAM (American society of addiction medicine). The results of the evaluation are based on the information provided by the client and any data available at the time of the assessment. Based on the information collected, Sarah does not meet the criteria for drug and alcohol or mental health treatment. I am aware of the pending DUI charges against Ms. Georgiev, I would follow the recommendations if any from the criminal division.

Sarah has complied with all random drug and alcohol screening, results have been negative. Her last random screening was October 20, 2023. This file is closed.

If you have any additional questions, please contact me at 412-350-7068 or Barbara.Hill@alleghenycounty.us

Thank you,

Barbara Hill, MA CAAP
IMPACT court assessor

# HSAO
## HUMAN SERVICES ADMINISTRATION ORGANIZATION

Human Services Administration Organization

101 BELLEVUE ROAD, SUITE 001

PITTSBURGH, PA  15229

PHONE: (412) 301-8232     FAX: (412) 301-8239

October 25, 2023

Re: Sarah Georgiev
Fd# 22-1317

To: The Honorable Judge Hugh McGough

    Sarah Georgiev was assessed by IMPACT court assessor Barbara Hill on July 19, 2023, using the ASAM (American society of addiction medicine).  The results of the evaluation are based on the information provided by the client and any data available at the time of the assessment.  Based on the information collected, Sarah does not meet the criteria for drug and alcohol or mental health treatment. I am aware of the pending DUI charges against Ms. Georgiev, I would follow the recommendations if any from the criminal division.

Sarah has complied with all random drug and alcohol screening, results have been negative.  Her last random screening was October 20, 2023.  This file is closed.

If you have any additional questions, please contact me at 412-350-7068 or Barbara.Hill@alleghenycounty.us

Thank you,

Barbara Hill, MA CAAP
IMPACT court assessor

**IN WITNESS WHEREOF** the undersigned, having due authority and intending to be legally bound hereby, have caused this Agreement to be executed as of the day and year first written above.

By: _____
National Loan Investors, LP
Authorized Representative: _____
Title: _____
Date: _____

By: _____/s/ Daniel Asti_____
Pittsburgh Development Group LLC
Authorized Representative: Daniel Asti
Title: Member
Date: 9/20/24

By:   Gabriel Fontana

By: _____
Date: _____

Daniel Asti
By: _____/s/ Daniel Asti_____
Date: 9/20/24

No thanks

Sent from my iPhone

On Oct 8, 2024, at 2:27 PM, Jonathan McCloskey <jmccloskey@mdbbe.com> wrote:

I am sure that you know from the settlement agreement that Mr. Fontana benefits by NLI Investors releasing their claim on the $240k FNB loan, even though Mr. Fontana admitted that he used those proceeds to pay of his Three Rivers Dismantlement LLC debt.

If your client is broke then 2 weeks as opposed to 90 days won't make a difference. Moving companies are going to charge money. Please investigate this issue so that we don't spin our wheels.

**Meyer Darragh Buckler Bebenek & Eck, PLLC**
600 Grant St., Suite 4850, Pittsburgh, PA  15219
www.mdbbe.com

## Jonathan McCloskey
*Attorney at Law*

412-261-6600  Main
412-553-7157  Direct
412-471-2754  Fax
jmccloskey@mdbbe.com

This transmission is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying, of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail, or by telephone, and permanently delete any electronic or printed version and attachments. Thank you.

**From:** Donald Calaiaro <dcalaiaro@c-vlaw.com>
**Sent:** Tuesday, October 08, 2024 2:18 PM
**To:** Jonathan McCloskey <jmccloskey@mdbbe.com>
**Subject:** Re: Gabriel S. Fontana - Chapter 7 Case No. 22-22293, W.D. Pa.

I understand your point. My client has no money. I'll suggest that his mother employ a mover. Are you willing to try to settle without his joinder? Then litigate the ownership issue? That will take more than 90 days. Let's consider the economics of not resolving this?
Sent from my iPhone



**Meyer Darragh Buckler Bebenek & Eck, PLLC**
600 Grant St., Suite 4850, Pittsburgh, PA  15219
www.mdbbe.com

# Jonathan McCloskey
*Attorney at Law*

412-261-6600  Main
412-553-7157  Direct
412-471-2754  Fax
jmccloskey@mdbbe.com

This transmission is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying, of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately by e-mail, or by telephone, and permanently delete any electronic or printed version and attachments.  Thank you.

**From:** Donald Calaiaro <dcalaiaro@c-vlaw.com>
**Sent:** Tuesday, October 08, 2024 12:50 PM
**To:** Jonathan McCloskey <jmccloskey@mdbbe.com>
**Subject:** Re: Gabriel S. Fontana - Chapter 7 Case No. 22-22293, W.D. Pa.

I want to understand from you that your clients will agree to release any claim(s) and we want 90 days to remove any remaining personal property.
Sent from my iPhone

On Oct 8, 2024, at 12:35 PM, Jonathan McCloskey <jmccloskey@mdbbe.com> wrote:

Don – the property will be publicly listed by a realtor of Dan's choosing after this is finalized.  I am happy to give you the realtor's contact info (once one is retained) to provide to Gabe's mom.  We will be listing it for FMV.  Not a fire sale.

Regards,

Jonathan

**Meyer Darragh Buckler Bebenek & Eck, PLLC**

600 Grant St., Suite 4850, Pittsburgh, PA  15219
www.mdbbe.com

## Jonathan McCloskey
*Attorney at Law*

412-261-6600  Main
412-553-7157  Direct
412-471-2754  Fax
jmccloskey@mdbbe.com

This transmission is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying, of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail, or by telephone, and permanently delete any electronic or printed version and attachments. Thank you.

**From:** Donald Calaiaro <dcalaiaro@c-vlaw.com>
**Sent:** Tuesday, October 08, 2024 12:30 PM
**To:** Jonathan McCloskey <jmccloskey@mdbbe.com>
**Cc:** Charles N. Shurr, Jr. <cshurr@kozloffstoudt.com>; Rosemary Crawford <crawfordmcdonald@aol.com>; Michael M. Monsour <mmonsour@kozloffstoudt.com>; Brenda Clemenz <bclemenz@nli.com>
**Subject:** Re: Gabriel S. Fontana - Chapter 7 Case No. 22-22293, W.D. Pa.

I'll work on that. Did everyone understand that my client's mother had interest in purchasing this property?
Sent from my iPhone

On Oct 8, 2024, at 12:19 PM, Jonathan McCloskey <jmccloskey@mdbbe.com> wrote:

We don't mind the release being mutual.  Dan/PDG does not intend to sue Mr. Fontana unless he interfered with this settlement agreement after it is fully signed.  Go ahead and draft your proposed redlines Don.  I believe we are supposed to submit a status report to the judge on 10/10 – would be good to have fully signed agreement before then.

Thanks,

**Meyer Darragh Buckler Bebenek & Eck, PLLC**
600 Grant St., Suite 4850, Pittsburgh, PA 15219
www.mdbbe.com

## Jonathan McCloskey
*Attorney at Law*

412-261-6600 Main
412-553-7157 Direct
412-471-2754 Fax
jmccloskey@mdbbe.com

This transmission is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying, of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail, or by telephone, and permanently delete any electronic or printed version and attachments. Thank you.

**From:** Donald Calaiaro <dcalaiaro@c-vlaw.com>
**Sent:** Tuesday, October 08, 2024 12:12 PM
**To:** Charles N. Shurr, Jr. <cshurr@kozloffstoudt.com>
**Cc:** Jonathan McCloskey <jmccloskey@mdbbe.com>; Rosemary Crawford <crawfordmcdonald@aol.com>; Michael M. Monsour <mmonsour@kozloffstoudt.com>; Brenda Clemenz <bclemenz@nli.com>
**Subject:** Re: Gabriel S. Fontana - Chapter 7 Case No. 22-22293, W.D. Pa.

If Asti is going to request Fontana to relinquish his claim of ownership, i want a release from them.
Sent from my iPhone

On Oct 8, 2024, at 8:08 AM, Charles N. Shurr, Jr. <cshurr@kozloffstoudt.com> wrote:

Don:

Does Fontana need a release? He should be receiving a discharge.

Please advise if there are any provisions that you believe the Chapter 7 Trustee may find objectionable.

Any income taxes should be the responsibility of PDG. NLI cannot agree to pay PDG's income taxes.

Chuck

<image007.jpg>
**Charles N. Shurr, Jr., Esq. | Shareholder**
Office: 610-670-2552  |  Cell: 484-269-3911  |  Fax: 610-670-2591
2640 Westview Drive, Wyomissing, PA 19610
<image003.jpg>
<image004.jpg>
<image005.jpg>
<image006.jpg>

CONFIDENTIALITY NOTICE: This message and any accompanying documents contain information belonging to the sender which may be confidential and legally privileged. This information is only for the use of the individual or entity to which it was intended. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this message and any accompanying documents is strictly prohibited. If you have received this message in error, please contact the sender immediately and delete the message. Thank you.

**From:** Donald Calaiaro <dcalaiaro@c-vlaw.com>
**Sent:** Monday, October 7, 2024 7:13 PM
**To:** Charles N. Shurr, Jr. <cshurr@kozloffstoudt.com>; Jonathan McCloskey <jmccloskey@mdbbe.com>; Rosemary Crawford <crawfordmcdonald@aol.com>
**Cc:** Gabe Fontana <gabe.fontana@outlook.com>
**Subject:** Re: Gabriel S. Fontana - Chapter 7 Case No. 22-22293, W.D. Pa.

This settlement doesn't seem to have Asti release fontana from any claim. Does this settlement anticipate that Fontana will waive any clims agiinst PDG?
Do you anticipate thst the ch 7 trustee will sign off on this?
I'd like to have the agreement state that NLI and Asti, shall pay all income taxes occasioned by the sale.
Sent from my iPhone

On Oct 7, 2024, at 11:08 AM, Donald Calaiaro <dcalaiaro@c-vlaw.com> wrote:

Please send it again. I cant find it in my emails. Thanks
Sent from my iPhone

On Oct 7, 2024, at 10:18 AM, Charles N. Shurr, Jr. <cshurr@kozloffstoudt.com> wrote:

Don:

Following up on the proposed Settlement Agreement.

Please let me know if you have any comments or concerns.  Thank you.

Chuck

<image001.jpg>
**Charles N. Shurr, Jr., Esq. | Shareholder**
Office: 610-670-2552 | Cell: 484-269-3911 | Fax: 610-670-2591
2640 Westview Drive, Wyomissing, PA 19610
<image002.jpg>
<image003.jpg>
<image004.jpg>
<image005.jpg>

CONFIDENTIALITY NOTICE:  This message and any accompanying documents contain information belonging to the sender which may be confidential and legally privileged. This information is only for the use of the individual or entity to which it was intended. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this message and any accompanying documents is strictly prohibited. If you have received this message in error, please contact the sender immediately and delete the message. Thank you.

**From:** Charles N. Shurr, Jr.
**Sent:** Tuesday, September 24, 2024 2:46 PM
**To:** Donald Calaiaro <dcalaiaro@c-vlaw.com>
**Cc:** Brenda Brown-Clemenz <bclemenz@nli.com>; Michael M. Monsour <mmonsour@kozloffstoudt.com>
**Subject:** Gabriel S. Fontana - Chapter 7 Case No. 22-22293, W.D. Pa.

Don:

Attached please find a Settlement Agreement that has been approved by the parties to resolve the pending Adversary Proceeding No. 23-02010.

Please let me know if you have any comments or concerns. Thank you.

Chuck


<image006.jpg>
**Charles N. Shurr, Jr., Esq. | Shareholder**
Office: 610-670-2552 | Cell: 484-269-3911 | Fax: 610-670-2591
2640 Westview Drive, Wyomissing, PA 19610
<image002.jpg>
<image003.jpg>
<image004.jpg>
<image005.jpg>


CONFIDENTIALITY NOTICE:  This message and any accompanying documents contain information belonging to the sender which may be confidential and legally privileged. This information is only for the use of the individual or entity to which it was intended. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this message and any accompanying documents is strictly prohibited. If you have received this message in error, please contact the sender immediately and delete the message. Thank you.

<image001.jpg>
<image002.jpg>
<image003.jpg>
<image004.jpg>
<image005.jpg>
<image006.jpg>